UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Freedom Mortgage Corporation, | Case No.: 2:14-cv-01928-JAD-NJK |
| Plaintiff | |
| v. | **Order Granting Motion to Dismiss**<br>[##13, 20] |
| Las Vegas Development Group, LLC, Maria Teresa Castro, Tierra de las Palmas Owners Association, | |
| Defendants | |

In the years following Las Vegas's real estate crash, lenders and investors were at loggerheads over the legal effect of a homeowners association's (HOA's) nonjudicial foreclosure of a superpriority lien on a lender's first trust deed. The Nevada Supreme Court settled the debate last September in *SFR Investments Pool 1, LLC v. U.S. Bank*, holding that "NRS 116.3116(2) gives an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust."[1] The *SFR* decision made winners out of the investors who purchased foreclosure properties in HOA sales and losers of the lenders who gambled on the opposite result, elected not to satisfy the HOA liens to prevent foreclosure, and thus saw their interests wiped out by sales that often yielded a small fraction of the loan balance.

Freedom Mortgage Corporation is one of these lenders. Its first-trust-deed interest in Maria Castro's Tierra de las Palmas Village home was extinguished when the HOA foreclosed on its liens after Castro defaulted on her HOA assessments.[2] Freedom Mortgage brings this action to challenge the extinguishment of its interest in the Castro property. It alleges that, because its loan to Castro was insured by the Department of Housing and Urban Development (HUD), the federal government has an interest in the property, and permitting the lender's security interest to be extinguished under

---

[1] *SFR Inv. Pool 1 v. U.S. Bank*, 334 P.3d 408, 419 (Nev. 2014).

[2] Doc. 1-2.

Page 1 of 20

NRS 116.3116(2) as clarified in *SFR* violates the Property and Supremacy Clauses of the United States Constitution. The investors who bought the Castro property from the HOA move to dismiss Freedom Mortgage's claims as legally unsound.

I find that Freedom Mortgage lacks standing to assert HUD's rights under the Property Clause and, regardless, HUD has no property interest in the Castro property. I also conclude that the Supremacy Clause does not preempt NRS 116.3116(2)'s application to HUD-insured mortgaged properties because Nevada's HOA superpriority lien law is consistent with HUD's single-family mortgage-insurance program.

## Background

### A. The Castro Property

Castro purchased her home at 2119 Spanish Town Avenue in North Las Vegas, Nevada in 2009 with a $98,188 loan from Freedom Mortgage, secured by a note and first deed of trust.[3] The loan was insured through the Federal Housing Administration (FHA) by HUD.[4] The property is subject to a 1997 Declaration of Covenants, Conditions, and Restrictions of the Tierra de las Palmas Owners Association (CC&Rs) that obligates homeowners in the Tierra de las Palmas neighborhood to pay certain dues and assessments for the HOA's operation and its common-area maintenance.[5]

### B. The HOA Foreclosure on the Castro Property

Castro defaulted on her HOA assessment payments, and the HOA conducted a proper, nonjudicial foreclosure sale in August 2011 at which it bought the property on a credit bid.[6] The HOA then sold the property to Las Vegas Development Group (LVDG) for $3,000 by quitclaim

---

[3] *Id.*

[4] Doc. 1 at 3, ¶ 11.

[5] Doc. 1-3 at 11; Doc. 20-2.

[6] Docs. 1-4, 1-5, 1-6, 1-7. At oral argument, *see* Doc. 37 (minutes), Freedom Mortgage acknowledged that the foreclosure process was properly performed; it disputes only the legal effect of that foreclosure on its first deed of trust.

deed.[7]

C. **HOA Liens under Nevada's Chapter 116**

"NRS 116.3116(1) gives an HOA a lien on its homeowners' residences" for unpaid assessments and fines, and NRS 116.3116(2) gives that lien priority over all other liens and encumbrances with limited exceptions.[8] NRS Chapter 116 permits HOAs to enforce those liens through nonjudicial foreclosure.[9]

As the Nevada Supreme Court explained in *SFR*, Nevada's HOA statutory-lien scheme, codified as NRS Chapter 116, "is a creature of Uniform Common Interest Ownership Act of 1982 . . . (UCIOA), which Nevada adopted in 1991."[10] After an extensive discussion of UCIOA history and Nevada's adoption in Chapter 116 of many of the UCIOA's provisions, the Nevada Supreme Court concluded in *SFR* that "NRS 116.3116(2) establishes a true superpriority lien" that is "senior to" a lender's first deed of trust.[11] The *SFR* court explained the importance of this enforcement tool for property owners in common-interest communities:

> [T]he recent foreclosure crisis . . . created [incentives] for first security holders to strategically delay foreclosure . . . . An HOA's sources of revenues are usually limited to common assessments. This makes an HOA's ability to foreclose on the unpaid dues portion of its lien essential for common-interest communities. Otherwise, when a homeowner walks away from the property and the first deed of trust holder delays foreclosure, the HOA has to either increase the assessment burden on the remaining unit/parcel owners or reduce the services the association provides (e.g. by deferring maintenance on common amenities). To avoid having the community subsidize first security holders who delay foreclosure, whether strategically or for some other reason, [the UCIOA provision on which NRS 116.3116 is

---

[7] Doc. 1-8.

[8] *SFR*, 334 P.3d at 410.

[9] *See id.* at 411, 414–15 (describing the steps an HOA must take to initiate a Chapter 116 nonjudicial foreclosure); Nev. Rev. Stat. §§ 116.3116(1), 116.31162.

[10] *Id.* at 410 (citing the Uniform Common Interest Ownership Act of 1982, § 3-116, 7 U.L.A., part II 121–24 (2009) (amended 1994, 2008)).

[11] *Id.* at 412–19.

based] creates a true superiority lien . . . .[12]

Thus, the court concluded, an HOA lien is much like "other inchoate liens such as real estate taxes and mechanics liens": proper foreclosure on these liens extinguishes the lien of the otherwise first mortgagee.[13]

### D. This Lawsuit and the Defendants' Motions to Dismiss

On November 19, 2014, two months after the *SFR* decision was handed down and more than three years after the foreclosure on the Castro property, Freedom Mortgage filed this complaint. It sues Castro, the HOA, and LVDG for declaratory and injunctive relief, quiet title, and an equitable lien. All claims hinge on the theory that its first trust deed on Castro's property could not have been extinguished by the HOA's foreclosure because the loan was insured by HUD, HUD thus "holds a mortgage interest in the Property," and the Constitution's Supremacy and Property Clauses preempt NRS 116.3116 from being "applied to loans insured by HUD."[14]

LVDG and the HOA now move to dismiss all claims.[15] LVDG argues that *SFR* is squarely dispositive because it supplies the rule that the lender's mortgage interest was extinguished by the HOA's foreclosure sale, and Freedom's claims fail because it no longer has any interest in the property as a matter of law. The HOA joins in LVDG's motion and additionally contends that Freedom Mortgage's claims against it are unripe because the lender failed to first bring them before the Nevada Real Estate Division (NRED) under NRS 38.310 and also failed to provide the affidavit required by NRS 116.760.[16] Because I grant LVDG's motion and dismiss Freedom Mortgage's claims as legally unsound, I decline to reach the HOA's additional arguments.

---

[12] *Id*. at 413–14 (internal citations omitted) (internal quotation marks omitted).

[13] *Id*. at 413 (quoting 1994 & 2008 UCIOA § 3-116 cmt. 1).

[14] Doc. 1 at 4.

[15] Castro has not appeared in this case.

[16] Doc. 20 at 2–4.

**Discussion**

**A.     The Property Clause**

The Property Clause provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belong[ing] to the United States."[17] In simple terms, it precludes states and private individuals from divesting the federal government—through state laws or otherwise—of title to property without congressional consent. As the Supreme Court explained in *Wilcox v. Jackson*, a "state has an undoubted right to legislate as she may please in regard to the remedies to be prosecuted in her Courts, and to regulate the disposition of the property of her citizens by descent, devise, or alienation.  But [when the property is] part of the public domain of the United States: Congress is invested by the Constitution with the power of disposing of, and making needful rules and regulations respecting it."[18]  "If a state were able to pass laws that could dispose of federal lands . . . the practical result . . . would be, by force of state legislation to take from the United States their own land, against their own will, and against their own laws."[19]

Freedom Mortgage contends that NRS 116.3116(2) is precisely that type of law and that allowing it to extinguish first trust deeds securing federally insured lender loans violates the Property Clause.[20] Freedom Mortgage's argument fails for two reasons: (1) it lacks standing to assert the federal government's Property Clause challenge and (2) the foreclosure on the Castro property deprived the federal government of no property interest.

***1.     Freedom Mortgage lacks standing to raise a Property Clause challenge.***

For this court to have jurisdiction over any case, "the party bringing the suit must establish

---

[17] U.S. Const. art. IV, § 3, cl. 2.

[18] *Wilcox v. Jackson*, 38 U.S. 498, 516 (1839).

[19] *Yunis v. United States*, 118 F. Supp. 2d 1024, 1032 (quoting *Wilcox v. Jackson*, 38 U.S. 498, 517 (1839)) (internal quotation marks omitted).

[20] Doc. 18 at 10.

standing."[21] There are two aspects to standing: Article III standing, which requires a case or controversy, and prudential standing, which "encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'"[22] "The question of prudential standing is often resolved by the nature and source of the claim. 'Essentially, the standing question in such cases is whether the constitutional . . . provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.'"[23]

"The Supreme Court's reasons for the general rule against third-party standing counsel against" granting Freedom Mortgage standing "to enforce the federal government's property rights" in the Castro property. As the Tenth Circuit expressed en banc in *The Wilderness Society v. Kane County, Utah*:

> We "must hesitate before resolving a controversy on the basis of the rights of third persons not parties to the litigation" for two reasons. "First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights do not wish to assert them." . . . "Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them."[24]

In short, "the federal government is the best advocate of its *own* interests."[25]

---

[21] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated in part on other grounds in Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014).

[22] *United States v. Lazarenko*, 476 F.3d 642, 649–50 (9th Cir. 2007) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

[23] *The Wilderness Soc'y v. Kane Cnty., Utah*, 632 F.3d 1162, 1169 (10th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

[24] *Wilderness Soc'y*, 632 F.3d at 1171–72 (quoting *Singleton v. Wulff*, 428 U.S. 106, 113–14 (1976)).

[25] *Id.* at 1172 (emphasis in original). Although the court undertook this analysis in response to the plaintiff's Supremacy Clause claim, it appears the court construed the Wilderness Society's argument as one more akin to a Property Clause challenge. *See id.* at 1171 (noting this was "essentially a property dispute between two landowners" in which the plaintiff "lack[ed] any

The federal government is not a party to this case. Its rights are being championed by private lender Freedom Mortgage, which acknowledges it is "neither attempting to sue under HUD's name nor asserting HUD's rights, because *Freedom* is the real party in interest."[26] Because HUD is the best proponent of its interests and has not sought to raise the challenge Freedom Mortgage brings, it would be imprudent for the court to recognize Freedom Mortgage's standing to pursue Property Clause claims in this case. I thus decline to recognize Freedom Mortgage's prudential standing to challenge the HOA's foreclosure on the Castro property under the Property Clause.

### 2. *Freedom Mortgage's Property Clause theory lacks merit because the foreclosure did not dispose of property belonging to the United States.*

A lack of standing would typically end my analysis. But because there can be disagreement about how to apply prudential-standing principles,[27] I also consider the merits of Freedom Mortgage's Property Clause challenge. Even assuming that this private lender could stand in HUD's shoes to challenge the extinguishment of the bank's first trust deed under the Property Clause, it cannot state a plausible claim because it can identify no federal-government-owned property disposed of by the HOA's foreclosure on the Castro property. Freedom Mortgage contends that "HUD's insurance of the mortgage, by itself, created a federal property interest that is protected by the Property Clause"[28] because "Ninth Circuit law . . . provides that the guarantee of a mortgage, by itself, is sufficient to create a federal property interest for purposes of the Property Clause."[29] Freedom Mortgage overstates the law.

---

independent property rights of its own."); *see also id.* at 1174 (rejecting the characterization of the claim as merely a Supremacy Clause issue, explaining, "we think that more than vindicating the federal government's right to regulate is at issue here. That right is expressly conditioned on the recognition of existing local property rights and necessarily entails the discretion of the United States as a property owner.").

[26] Doc. 18 at 5 (emphasis in original).

[27] *See, e.g.*, Bradford C. Mank, *Judge Posner's "Practical" Theory of Standing: Closer to Justice Breyer's Approach to Standing Than to Justice Scalia's*, 50 Hous. L. Rev. 71, 81 (2012).

[28] Doc. 18 at 10.

[29] *Id.* at 7.

Page 7 of 20

The Ninth Circuit has not held that a HUD insurance policy on a bank loan gives the federal government a property interest protected by the Property Clause. It has held that a deed of trust securing a purchase-price mortgage is a protected interest.[30] And lower courts in this circuit have held that an HOA's foreclosure on property owned by a federal agency violates the Property and Supremacy Clauses.[31]

The key to a successful Property Clause challenge is that the federal government either held a deed of trust against, or owned, the property.[32] Freedom Mortgage has not demonstrated that HUD had, has, or will ever acquire a constitutionally protected interest in the Castro property. At oral argument, despite pointed questions from the bench, counsel for Freedom Mortgage was unable to

---

[30] In *Rust v. Johnson*, 597 F.2d 174, 176, 181 (9th Cir. 1979), a case relied on by Freedom Mortgage (Doc. 18 at 8–9), the Ninth Circuit panel held that the City of Los Angeles's foreclosure on property in which the federal government held an assignment of a purchase-money mortgage interest "was an unconstitutional exercise of state power over property of the United States." The panel found the conclusion consistent with the long-recognized principle that "local governments cannot take any action to collect unpaid taxes assessed against property [that] would have the effect of reducing or destroying the value of a federally held purchase-money mortgage lien." *Id.* at 179 (quoting *United States v. General Douglas MacArthur Senior Village, Inc.*, 470 F.2d 675, 680 (2d Cir. 1972)).

[31] In *Secretary of HUD v. Sky Meadow Association*, 117 F. Supp. 2d 970 (C.D. Cal. 2000), Ninth Circuit Judge Paez, sitting by designation, held that an HOA's nonjudicial foreclosure on a HUD-owned property for failure to pay assessments was barred. Although the judge "recognize[d] that the homeowners association has a legitimate need to collect the assessment fees to maintain the common areas," he concluded that "its resort to a non-judicial foreclosure sale of property owned by the United States [wa]s improper." *Sky Meadow*, 117 F. Supp. 2d at 978. Judge Paez emphasized he was "concerned with the role of the government as a property owner" and noted that "the end result, i.e. the taking of property from the government without its consent, interferes with the government's property rights by definition." *Id.* at 979, 981 n.5. On the same day he issued *Sky Meadow*, Judge Paez held in *Yunis v. United States*, 118 F. Supp. 2d 1024, that the same HOA's foreclosure on a property owned by the Department of Veterans Affairs (VA) violated the Property and Supremacy Clauses and was similarly void.

[32] *See, e.g., Rust*, 597 F.2d at 179 (FNMA held "an assignment of a purchase money mortgage interest in the property"); *Yunis*, 118 F. Supp. 2d at 1027 (federal government owned the property after lender foreclosed and deeded the property to the VA); *Sky Meadow*, 117 F. Supp. 2d at 973 (federal government owned the property after lender foreclosed and deeded the property to HUD); *United States v. Stadium Apts., Inc.*, 425 F.2d 358, 359 (9th Cir. 1970) (HUD owned the property after assignment by the bank, paid the mortgage-insurance claim, and foreclosed on the property); *United States v. View Crest Garden Apts., Inc.*, 268 F.2d 380, 381 (9th Cir. 1959) (mortgage was assigned to the FHA). *See* additional cases cited *infra* note 38.

identify any HUD property interest at the time of the foreclosure or since. This is unsurprising when Freedom Mortgage makes clear in its opposition brief that it is "neither attempting to sue under HUD's name nor asserting HUD's rights, because *Freedom* is the real party in interest."[33] And it stresses that, "[a]s the holder and beneficiary of the mortgage, Freedom owns the associated property and contract rights pursuant to Nevada law."[34]

Counsel also conceded at oral argument that the only way that HUD could become financially impacted by this foreclosure would be for Freedom Mortgage to make a claim against the HUD mortgage-insurance policy. But that occurrence is now improbable. A lender must make a claim under a HUD policy within 30 days of the foreclosure.[35] This foreclosure occurred nearly four years ago,[36] and Freedom Mortgage never made a claim. The policy also terminated upon foreclosure.[37] Thus, HUD's status with respect to this property will likely never be anything more than a former insurer of the Castro loan, which collected premium payments but never incurred a claim-payment obligation. That interest is far too attenuated to reasonably consider the HOA's foreclosure as disposing of "[p]roperty belong[ing] to the United States" in contravention of the Property Clause.[38]

---

[33] Doc. 18 at 5 (emphasis added).

[34] *Id.*

[35] *See* 24 C.F.R. § 203.368(i)(5)(ii) ("Where a mortgagee files a claim for the insurance benefits without conveying title to the property to the Commissioner, as authorized by this section . . . [t]he mortgagee shall file its claim . . . (ii) [w]ithin 30 days after a party other than the mortgagee acquired good marketable title to the property").

[36] Doc. 1 at 3 (alleging August 16, 2011, foreclosure sale).

[37] *See* 24 C.F.R. §§ 203.315(a)(2)(i), (b)(2) (providing that the insurance contract "shall be terminated" if "[t]he property is bid in and acquired at a foreclosure sale by a party other than the mortgagee").

[38] Two courts in this district have considered Property Clause challenges to foreclosure sales of properties with federally insured mortgages and found the sales invalid. In *Washington & Sandhill Homeowners Association v. Bank of America, N.A.*, 2014 WL 4798565, at *6 (D. Nev. Sept. 25, 2014), the court suggested without finding that "it would not be a significant extension of the Property Clause's protection to hold that HUD's insurance of a mortgage under the FHA insurance program created a federal property interest that can be divested only by an act of Congress." And in *Saticoy Bay LLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, 2015 WL 1990076, at

**B.     The Supremacy Clause**

I also cannot conclude that enforcing NRS 116.3116 against a property with a HUD-insured mortgage violates the Supremacy Clause. Federal law can preempt state law under the Supremacy Clause in three ways: express, field, or conflict preemption.[39] Freedom Mortgage's theory that HUD's mortgage-insurance program preempts the application of NRS 116.3116(2) as interpreted by *SFR* against properties carrying a HUD-insured mortgage is purely a conflict-preemption one. This lender argues that permitting HUD's interest to be extinguished by an HOA foreclosure would have two results. First, it "would undermine—in fact, *eliminate*—HUD's ability to obtain title after foreclosure and resell the Property (or to receive an assignment of the mortgage and foreclose in its own name)," thus "imped[ing] the purpose of the program, which is 'to make decedent [sic] housing available to all citizens.'"[40] Second, it would make "HUD subject to the vagaries of different states' laws [and] would impede the purpose of the Single Family Mortgage Insurance Program[] to enable

---

\*4 (D. Nev. Apr. 30, 2015), the court rejected the notion that a federal ownership interest must exist to implicate the Property Clause. The *Saticoy Bay* court relied, in part, on the Eighth Circuit's notation "that federal law, not [state] law, governs the rights and liabilities of the parties in cases dealing with the remedies available upon default of a federally held *or insured* loan" in *United States v. Victory Highway Village, Inc.* 662 F.2d 488, 497 (8th Cir. 1981) (emphasis added).

But the cases cited in *Victory Highway* support this notion only as to federally *held* loans or property, not as to federally *insured* loans. See *Victory Highway*, 662 F.2d at 498 (citing *Stadium Apts.*, 425 F.2d at 359 (ruling involved HUD-owned property); *View Crest*, 268 F.2d at 381 (FHA held the mortgage after assignment); *United States v. Scholnick*, 606 F.2d 160, 164 (6th Cir. 1979) (ruling involved HUD-held mortgage); *United States v. Chester Park Apts., Inc.*, 332 F.2d 1, 4 (8th Cir. 1964) (noting the issue was the same as in *View Crest* and concluding that federal law applied to appointment of receiver under the express terms of a mortgage that was assigned to the FHA before foreclosure)). Indeed, *Victory Highway* itself involved federally owned mortgages assigned to HUD pre-foreclosure, suggesting that the "or insured" language relied upon in *Saticoy Bay* is *gratis dictum*. See *Victory Highway*, 662 F.2d at 491.

Freedom Mortgage has supplied—and I find—no legal justification to conclude that the Property Clause also bars HOA foreclosure sales of properties with private-lender-owned mortgages that HUD has merely insured.

[39] *Aguayo v. U.S. Bank*, 653 F.3d 912, 918 (9th Cir. 2011) (citing *Bank of Amer. v. City & Cnty. of S.F.*, 309 F.3d 551, 558 (9th Cir. 2002)).

[40] Doc. 18 at 10–14 (quoting *Sky Meadow Ass'n*, 117 F. Supp. 2d at 973–74) (emphasis in original).

low-income borrowers to obtain loans with the least risk of loss upon foreclosure."[41]  Freedom Mortgage's apocalyptic predictions are unsupportable, and permitting a lender to lose its security interest when it fails to protect its collateral by satisfying HOA liens is not just consistent with—but contemplated by—HUD's program.

### 1. *No conflict preemption*

Conflict preemption occurs where "there is an actual conflict between state and federal law"[42] because "(1) compliance with both federal and state regulations is a physical impossibility, or . . . (2) state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[43]  Neither circumstance exists here because the lender controls its ability to comply with both state law and the federal program, and because Nevada's superpriority law for HOA-assessment foreclosures is no obstacle to the purpose and objective of HUD's program.

As HUD's website and various publications explain, the single-family mortgage-insurance "program provides mortgage insurance to protect lenders against the risk of default on mortgages to qualified buyers."[44]  The federal regulations governing the program are contained in the Code of Federal Regulations (CFR), Title 24.[45]

When a HUD-insured mortgage goes into default, the lender may make a claim for the

---

[41] *Id.*

[42] *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76–77 (2008) (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)).

[43] *Bank of Am.*, 309 F.3d at 558 (quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963); *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)) (internal citations omitted) (internal quotation marks omitted).

[44] U.S. Dep't of Hous. & Urban Dev., Mortgage Insurance for One to Four Family Homes Section 203(b), *available at* http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/ins/203b--df (last visited May 14, 2015); U.S. Dep't of Housing & Urban Dev., Lender's Guide to the Single Family Mortgage Insurance Process, 4155.2, Ch. 1, § A at 2, *General Information on Programs, Process and Loan Origination Requirements/Restrictions*, *available at* http://portal.hud.gov/hudportal/documents/huddoc?id= 4155-2_1_secA.pdf (last visited May 15, 2015).

[45] The CFRs governing the program are available on the Cornell University Law School's Legal Information Institute website at https://www.law.cornell.edu/cfr/text/24/chapter-II/subchapter-B/.

remaining principal amount owed under the loan.  Typically, the lender must assign the mortgage to HUD[46] and certify that the mortgage is "prior to all liens and encumbrances, or defects which may arise except such liens or other matters as may have been approved by the Commissioner."[47] Alternatively, the lender may foreclose, acquire title, and make a claim for the deficiency.[48] The insurance contract "shall be terminated" if "[t]he property is bid in and acquired at a foreclosure sale by a party other than the mortgagee"—which is to say, any party except the lender.[49]  In short, a lender has two primary ways to obtain benefits under the program: (1) assign the first-position mortgage interest to HUD before foreclosure or (2) initiate foreclosure and make a claim for the deficiency.

Nothing prevents a lender from simultaneously complying with HUD's program and Nevada's HOA-foreclosure laws.  Freedom Mortgage's argument that "[a]llowing HUD's interest to be extinguished pursuant to Nevada law would undermine—in fact, *eliminate*—HUD's ability to obtain title after foreclosure and resell the [p]roperty (or to receive an assignment of the mortgage and foreclose in its own name)"[50] mischaracterizes the effect of NRS 116.3116 in this case by skipping a crucial step in the claim process.  The lender's interest is extinguished by the foreclosure, not HUD's.  And the lender's inability to convey good and marketable title to HUD results in a loss to the lender, not to HUD.

The lender gets itself into this predicament only by ignoring HUD's directives.  To ensure that it remains able to make a claim, a participating lender has an affirmative obligation to protect its security so it can convey good and marketable title to HUD along with its claim.  The lender must

---

[46] 24 C.F.R. § 203.350(a)(1); 24 C.F.R. § 203.366.  The parties never state that Castro has defaulted on her mortgage, though this fact seems implicit because Freedom Mortgage is bringing suit to quiet title in itself.  *See, e.g.*, Doc. 1 at 6 (quiet-title claim against all defendants).

[47] 24 C.F.R. § 203.353(a).

[48] 24 C.F.R. § 203.401(b)(1); 24 C.F.R. § 203.368.

[49] 24 C.F.R. § 203.315(a)(2)(i), (b)(2).

[50] Doc. 18 at 12–13 (emphasis in original).

ensure that all taxes and all other assessments are paid to prevent liens from attaching to the property.[51] This obligation specifically includes HOA fees and assessments.[52] The lender must negotiate a release of outstanding HOA fees and assessments and ensure that liens are removed from title, and HUD will reimburse the lender for these amounts.[53]

Lenders "must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department."[54] HUD has specifically directed its participating lenders "to (a) implement procedures that will result in them being notified when mortgagors default on HOA fees; and/or (b) establish escrows for HOA fees."[55]

In superpriority lien states, the HUD-insured lenders' obligation to prevent foreclosure by satisfying HOA liens is not an aspirational goal: it's a requirement. A 2002 HUD publication sent to participating mortgagees—and in effect at the time of the foreclosure on the Castro property—warned lenders that, in states where unpaid HOA assessments are deemed a priority lien, lenders had an obligation to satisfy those liens. HUD took the risk away by making those expenditures "100 percent reimbursable to the lender":

> At this time, condominium and homeowners' association (HOA) fees are not required escrow items for FHA-insured single-family mortgages. Therefore, payment of condo/HOA fees as they become due is the mortgagor's responsibility. When the mortgagor defaults and foreclosure action becomes necessary, lenders must name and properly serve HOAs and condominium associations in the foreclosure proceedings in order to eliminate or reduce HUD's responsibility for unpaid condominium/HOA fees. **Further, lenders must take any action necessary to protect HUD's interest in the property against foreclosure actions brought by a condominium/HOA.**

---

[51] *See* U.S. Dep't of Hous. & Urban Dev., Mortgagee Letter 2013-18, Updated Clarification Regarding Title Approval at Conveyance (2013), *available at* http://portal.hud.gov/hudportal/documents/huddoc?id= 13-18ml.pdf.

[52] *Id.* at 2.

[53] *Id.* at 3–4; *see also* 24 C.F.R. § 203.402(j).

[54] 24 C.F.R. § 203.501.

[55] HUD Mortgage Letter 2013-18 at 5, *supra* note 51.

> **For those states where unpaid condo/HOA assessments constitute a priority lien against the property, lenders must first attempt to negotiate with the condo/HOA to waive or accept reduced payments for delinquent fees. Should the negotiations prove unsuccessful, lenders should pay all condominium/HOA fees prior to conveyance, whether or not the association has filed a lien.**
>
> Also, in non-priority states, HUD may request that the lender voluntarily pay delinquent condo/HOA fees to ensure the viability of the homeowner's association, which in turn will assist in maintaining property values and may also reduce future mortgage insurance claims. For these same reasons, **HUD will not object if lenders voluntarily pay delinquent condo/HOA fees that were the responsibility of the former borrower to pay.**
>
> **Condominium/HOA fees paid by the lender are 100 percent reimbursable to the lender** in accordance with 24 CFR 203.402(j). Lenders may also claim reimbursement for penalties, interest, and/or late fees incurred by the former mortgagor and paid by the lender . . . .[56]

This directive is entirely consistent with Nevada's superpriority law for unpaid HOA assessments. The drafters of the UCIOA (on which NRS 116.3116 is modeled) recognized that, "As a practical matter, secured lenders will most likely pay the . . . nine . . . months' assessments demanded by the association rather than having the association foreclose on the unit."[57] The Nevada Supreme Court cited this easy fix in *SFR* in response to the banks' lament that allowing a nominal lien to extinguish often hundreds of thousands of dollars in security would be unfair:

> [A]s a junior lienholder, [the bank] could have paid off the [HOA] lien to avert loss of its security; it also could have established an escrow for [HOA] assessments to avoid having to use its own funds to pay delinquent dues. **The inequity [the bank] decries is thus of its own**

---

[56] U.S. Dep't of Hous. & Urban Dev., Mortgagee Letter 2002-19 at 2–3, *available at* http://portal.hud.gov/hudportal/HUD?src=/program_offices/administration/hudclips/letters/mortgagee/2002ml (emphasis added). Letter 2002-19 was superseded by HUD Mortgagee Letter 2012-11 effective November 1, 2012. *See* U.S. Dep't of Hous. & Urban Dev., Mortgagee Letter 2012-11, *available at* http://portal.hud.gov/hudportal/documents/huddoc?id=12-11ml.pdf; and U.S. Dep't of Hous. & Urban Dev., Mortgagee Letter 2012-14, *available at* http://portal.hud.gov/hudportal/documents/huddoc?id=12-14ml.pdf. Letter 2012-11 was superseded by Mortgagee Letter 2013-18, *supra* note 49. In each iteration of the publication, HUD has warned participating banks that the ultimate responsibility to keep properties free and clear of HOA liens falls on the banks.

[57] *SFR*, 334 P.3d at 413 (quoting 1982 UCIOA § 3-116 cmt. 1; 1994 & 2008 UCIOA § 3-116 cmt. 2).

making . . . .[58]

The First Circuit relied on similar considerations in *Chicago Title Insurance v. Sherred Village Associates* in rejecting a Supremacy Clause challenge to Maine's statute that gives mechanics' liens priority over a HUD-insured mortgage interest. The panel reasoned:

> [E]ven if HUD holds the mortgage, if a contractor seeks to enforce a mechanics' lien, in most cases the mortgagee will decide that it is better off advancing the money to pay off the mechanics' lien so that the project can continue than allowing the property to be sold, even if the mortgagee is entitled to the bulk of the proceeds.
>
> The result of allowing state law to govern in this case, then, would not be to establish two different sets of priorities for disposition of sale proceeds, but only to allow a contractor to force HUD, or someone to whom HUD has passed the risk, to make sure that the contractor gets paid for all work done with the consent of the owner. A contrary rule . . . would mean that a contractor would have no way of forcing recovery for work performed with the consent of the owner, or even with the consent of HUD, unless he could file his lien prior to the recording of the mortgage.[59]

Applying Nevada's superpriority HOA-lien law here simply recognizes that the HOA has a right to payment of the dues and assessments it requires to maintain the community's common areas and homeowners' property values.[60] By choosing not to satisfy those obligations, prevent foreclosure, and preserve its collateral, Freedom Mortgage has only itself—not a conflict of laws—to blame for its loss.

   2.   *Allowing NRS 116.3116 to apply to HUD-insured mortgaged properties comports with Kimbell Foods.*

Allowing Nevada's HOA-lien superpriorty law to extinguish a lender's first trust deed, despite the lender's participation in HUD's single-family mortgage-insurance program, is also consistent with the United States Supreme Court's decision in *United States v. Kimbell Foods, Inc.*[61] In *Kimbell Foods*, the high court noted that federal law governs questions involving the rights of the

---

[58] *Id.* at 414 (emphasis added).

[59] *Chicago Title Ins. v. Sherred Village Assocs.*, 708 F.2d 804, 809–10 (1st Cir. 1983).

[60] *SFR*, 334 P.3d at 413–14.

[61] *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726 (1979).

Page 15 of 20

United States arising under nationwide federal programs, but even "[c]ontroversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules."[62] "Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.'"[63] The court articulated three factors for a federal court to consider "in determining whether federal law should adopt a state rule of decision to govern federal programs": (1) "the likelihood that application of state law would frustrate specific objectives of the federal program," (2) "the need for a nationally uniform body of law," and (3) "the extent to which application of a federal rule would disrupt commercial relationships predicated on state law."[64] Analyzing HUD's mortgage-insurance program and NRS 116.3116 in light of these factors also compels the conclusion that federal law would adopt the state law here.

### a. NRS 116.3116(2) does not frustrate specific objectives of the single-family mortgage-insurance program.

Freedom Mortgage's main preemption argument is that allowing NRS 116.3116(2) to extinguish its first trust deed "would impede the purpose of the Single Family Mortgage Insurance Program, to enable low-income borrowers to obtain loans with the least risk of loss upon foreclosure."[65] Freedom Mortgage does not explain how requiring a lender to protect its collateral from an HOA foreclosure by satisfying unpaid HOA assessments would, in fact, impede the program's goals, and I find no support for this conclusion.[66]

---

[62] *Kimbell Foods*, 440 U.S. at 727–28.

[63] *Id.* at 728 (quoting *United States v. Standard Oil Co.*, 332 U.S. 301, 310 (1947)).

[64] *Chicago Title*, 708 F.2d at 810 (citing *Kimbell Foods*, 440 U.S. 728–29).

[65] Doc. 18 at 14.

[66] Freedom Mortgage has not persuaded me—and I have independently found no reason—to reach the conclusion in *Washington & Sandhill*, 2014 WL 4798565 at *6–7, that an HOA foreclosure under NRS 116.3116 on a "[p]roperty with a mortgage insured under the FHA insurance program" is barred by the Supremacy Clause because it "would have the effect of limiting the effectiveness of the

The policy behind the program[67] is to boost "housing production and related community development sufficient to remedy the serious housing shortage, the elimination of substandard and other inadequate housing through the clearance of slums and other blighted areas, and the realization as soon as feasible of a decent home and a suitable living environment for every American family."[68] As part of that policy, Congress directed HUD to exercise its "powers, functions, and duties" to "encourage and assist . . . the increase of efficiency in residential construction and maintenance" and "the development of well-planned, integrated, residential neighborhoods and the development and redevelopment of communities."[69]

Nevada's HOA laws—and NRS 116.3116(2) in particular—are entirely consistent with these goals of improving residential community development, eliminating blight, and preserving property values. "The tight restrictions on home design and maintenance, and the overall conformity required by homeowner associations, tends to preserve the character of the community and enhance the value of the property."[70] HOAs require budgets to operate and, as the Nevada Supreme Court explained in *SFR*:

---

remedies available to the United States." And unlike the court in *Saticoy Bay*, 2015 WL 1990076, at *4, I find no reason to conclude that HUD's mere insuring of the mortgage renders the HOA foreclosure sale invalid.

[67] One of the other primary goals of the single-family mortgage-insurance program is to protect lenders against the risk of default on mortgages to qualified buyers. *See* HUD Lender's Guide 4155.2, Ch. 1, § A at p.2, *supra* note 42. But the program is not intended to protect lenders from their own poor strategic decisions—like the decision not to pay the HOA assessments that had accrued on the Castro property and to stand silently by while the HOA foreclosed. No congressional policy is impeded when lenders bear the economic risks of their calculated decisions to not protect their collateral.

[68] 42 U.S.C. § 1441(a) (reaffirming the goals of the Housing Act of 1949); *see also* 12 U.S.C. § 1701t.

[69] *Id.*

[70] Richard Damstra, *Don't Fence Us Out: The Municipal Power to Ban Gated Communities and the Federal Takings Clause*, 35 Val. U.L. Rev. 525, 534 (2001) (citing David J. Kennedy, *Residential Associations as State Actors: Regulating the Impact of Gated Communities on Nonmembers*, 105 Yale L.J. 761, 766 (1995)).

> an HOA's ability to foreclose on the unpaid dues portion of its lien [is] essential for common-interest communities. Otherwise, when a homeowner walks away from the property and the first deed of trust holder delays foreclosure the HOA has to "either increase the assessment burden on the remaining unit/parcel owners or reduce the services the association provides (e.g., by deferring maintenance on common amenities)."[71]

The superpriority lien created by NRS 116.3116(2) is a powerful tool for an HOA "[t]o avoid having the community subsidize first security holders who delay foreclosure."[72]

Giving the HOAs a superpriority lien also helps keep homebuyers in their homes. It incentivizes banks to satisfy liens to avoid HOA foreclosure on the homeowners, enhancing the federal policy of keeping people in their homes. Thus, NRS 116.3116(2) furthers Congress's goals for the HUD program.

### b. *Freedom Mortgage* has shown no need for national uniformity, and homebuyers and HOAs should be able to rely on Nevada's superpriority rule to maintain common-interest communities.

Freedom Mortgage has demonstrated no need for a nationally uniform body of HOA lien priority law. It contends (without evidence) that it is "doubtful . . . that Congress in enacting the Single Family Mortgage Insurance Program, intended 'the outcome to depend upon varying characterizations of state law.'"[73] But the HUD program has the built-in flexibility for individual state priority rules to operate symbiotically with the program's requirements. This flexibility exists because HUD puts the burden on participating lenders to ensure that taxes, fees, and other assessments are paid so that liens do not attach and states' various lien-priority rules are never triggered. It also takes the economic risk away from lenders by promising to reimburse their

---

[71] *SFR*, 334 P.3d at 414 (quoting Joint Editorial Bd. for Uniform Real Property Act, *The Six-Month "Limited Priority Lien" for Association Fees Under the Uniform Common Interest Ownership Act*, 5–6 (2013)).

[72] *Id.* at 414.

[73] Doc. 18 at 13 (quoting *Sky Meadow*, 117 F. Supp. 2d at 978).

expenditures.[74] Thus, Nevada's superpriority-lien law allows HUD's mortgage-insurance program to function in exactly the way federal law contemplates.

Nevada's legislature has developed a rich body of law for common-interest communities in this state, and superpriority status for HOA liens is a key means of enforcing those laws.[75] If private lenders could earn an exemption from those laws merely by buying mortgage insurance from the federal government, lenders would be disincentivized to ensure their mortgagors' HOA dues and assessments are paid so that common areas and property values can be maintained. This result is inharmonious with Congress's intent to help stabilize the housing market. Nevadans who purchase homes in these common-interest neighborhoods should have the certainty of knowing that they will not have to subsidize the private lenders who fund mortgages in their communities but make the strategic choice not to satisfy the related HOA obligations.

Just like the First Circuit panel in *Chicago Title* was "not persuaded that Congress has spoken on the need for a federal rule of priority in all disputes involving HUD mortgages,"[76] neither am I. As the Supreme Court reasoned—when concluding in *Kimbell Foods* that a uniform, federal mechanics' lien priority rule is not "necessary to ease program administration or to safeguard the Federal Treasury from defaulting debtors"—Nevada law "furnish[es] convenient solutions in no way inconsistent with adequate protection of the federal interests,"[77] and "the prudent course is to adopt the readymade body of state law as the federal rule of decision until Congress strikes a different accommodation."[78]

## Conclusion

Neither the Property Clause nor the Supremacy Clause barred Tierra de las Palmas's nonjudicial foreclosure sale of the Castro property nor NRS 116.3116(2)'s extinguishment of

---

[74] *See generally* HUD Mortgagee Letter 2013-18, *supra* note 51.

[75] *SFR*, 334 P.3d at 414.

[76] *Chicago Title*, 708 F.2d at 810.

[77] *Kimbell Foods*, 440 U.S. at 729 (quoting *Standard Oil*, 332 U.S. at 309).

[78] *Id.* at 740.

Freedom Mortgage's security interest in that property. Freedom Mortgage's interest in the property was wiped out at the time of that sale, and it no longer has any cognizable interest in the Castro property. Because all of Freedom Mortgage's claims are predicated on the assertion that it retained a legal interest in the property despite the foreclosure—a premise that fails as a matter of law—all of its claims must be dismissed with prejudice.[79] The dismissal of all claims on this basis moots the HOA's motion for summary judgment.[80]

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Las Vegas Development Group, LLC's Motion to Dismiss, in which the Tierra de las Palmas Owners Association has joined, **[Doc. 13] is GRANTED. Plaintiff's claims are dismissed with prejudice.**

IT IS FURTHER ORDERED that the HOA's Motion to Dismiss **[Doc. 20] is DENIED** as moot.

**The Clerk of Court is instructed to enter judgment accordingly and close this case.**

DATED this 19th day of May, 2015

_____
Jennifer A. Dorsey
United States District Judge

---

[79] Amendment is futile if it "would merely enlarge on the legal theory rejected" by the court. *Kentmaster Mfg. v. Jarvis Prods. Corp.*, 146 F.3d 691, 696 (9th Cir. 1998).

[80] Doc. 20.